IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| ANDREW L. GARLAND, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:15-cv-00012 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CITY OF DANVILLE, VIRGINIA, | ) | By: Hon. Jackson L. Kiser |
| | ) | Senior United States District Judge |
| Defendant. | ) | |

Plaintiff Andrew L. Garland filed this action against the defendant, the City of Danville, Virginia, on April 7, 2015. On November 14, 2015, the City moved for summary judgment on all of Plaintiff's claims. [ECF No. 25.] The matter was fully briefed by the parties, and I heard oral argument on the Motion on January 14, 2016. The matter is now ripe for decision. For the reasons stated herein, I will grant the City's Motion for Summary Judgment.

I. **STATEMENT OF FACTS AND PROCEDURAL BACKGROUND**

Plaintiff Andrew Garland ("Plaintiff"), who is African-American, began working for the City of Danville ("the City"), Sanitation Division, around 2003. Plaintiff was employed as a Sanitation Operator II, and his job consisted of refuse and recyclable collection on City-owned trucks. In late 2003, Plaintiff was one of the City's "most trained operators." (Aff. of Wallace Wyatt ¶ 14, Nov. 12, 2015 [ECF No. 26-3].) The Sanitation Division consisted of six refuse drivers and two spare drivers for a total of eight drivers, seven of whom were African-American.

Plaintiff's immediate supervisor was Wallace Wyatt, a General Supervisor in the Sanitation Division of the Department of Public Works. (Wyatt Aff. ¶¶ 1, 4.) During the relevant period, Wyatt's supervisor was Christopher Goss, Division Director for Sanitation (Aff. of Christopher Goss ¶¶ 1 & 4, Nov. 13, 2015 [ECF No. 26-6]), and Goss's supervisor was

Richard Drazenovich, Director of the Department of Public Works (id. ¶ 4; Aff. of Richard Drazenovich ¶ 1, Nov. 13, 2015 [ECF No. 26-5]).

According to Wyatt, on March 30, 2012, Plaintiff caused damage to a property owner's yard by "creating ruts in the yard." (Wyatt Aff. ¶ 28.) Plaintiff was apparently attempting to turn around in the owner's yard. (Drazenovich Aff. ¶ 35.) Drazenovich asserts that Plaintiff did not report this incident (id.), and Plaintiff has not denied that allegation.

On August 16, 2012, "Plaintiff failed to retract the dump arm [on his truck] and struck a private citizen's vehicle, causing significant damage." (Id. ¶ 36.) Plaintiff has not denied that allegation.

On August 19, 2013, "while collecting refuse, [] Plaintiff hit the wrong switch, opening the tailgate and dumping trash into the street." (Id. ¶ 37.) Other personnel were called from their locations to assist in cleaning up the trash. (Id.) Plaintiff has not denied that allegation.

On May 7, 2013, Plaintiff "failed to maintain proper control of his vehicle as he attempted to make a turn and drove off the shoulder, damaging a property owner's grass and nearly reach[ing] a steep embankment." (Id. ¶ 38.) Plaintiff has not denied that allegation.

On December 9, 2013, Plaintiff was written up and drug tested "for dragging a leaf loader across the parking lot. [He] received this treatment even though [he] told Wyatt [he] had followed the proper procedure and made sure that the leaf loader was properly hitched, but before [he] was able to leave the parking lot[,] an inmate unhitched the leaf loader without [Plaintiff's] knowledge." (Aff. of Andrew Garland ¶ 13, Dec. 9, 2015 [ECF No. 31-1].)

According to Goss, "[a]lthough [] Plaintiff claimed that an inmate driving with him sabotaged the equipment, it is the driver's responsibility to be aware of an inmate's actions at all times, and for 'pre-tripping' the vehicle prior to operation, which includes verifying that the hitch

- 2 -

Case 4:15-cv-00012-JLK-RSB   Document 37   Filed 02/05/16   Page 2 of 14   Pageid#: 505

is properly connected." (Goss Aff. ¶ 11.) Wyatt does not mention the inmate Plaintiff was supervising, but stated he "concluded that, as the driver, it was [] Plaintiff's responsibility to check all equipment for proper attachment before he drives the truck." (Wyatt Aff. ¶ 19.) Plaintiff was initially suspended for five days without pay, but Drazenovich reduced Plaintiff's suspension to two days without pay. (Drazenovich Aff. ¶ 21.) The Accident Review Committee[1] reviewed Plaintiff's punishment and determined that the accident was preventable. (Id.) Plaintiff was advised, in writing, that this incident was his "last chance" and that future acts of carelessness would result in termination. (Wyatt Aff. ¶ 19.)

Plaintiff filed a grievance regarding his punishment on January 17, 2014. (Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. (hereinafter "Pl.'s Mem.) Ex. D [ECF No. 31-4].) Plaintiff contended that Scott Hilton, a white employee, "had the same incident and was NOT CHarged!! [*sic*]" (Id.) According to Plaintiff, Hilton had an incident in 2013:

> [Hilton] was attempting to disconnect a vacuum and pulled forward. As a result, a pin on the ring wedged and the motor pool had to come out to the site to repair the equipment. Hilton was not written up or drug tested because Wyatt classified this incident as equipment malfunction.

(Garland Aff. ¶ 14.) According to Wyatt, "[t]his specific type of equipment malfunction is not unheard of." (Wyatt Aff. ¶ 26.) Wyatt stated that there was "nothing Hilton could have done [that] would have prevented this incident." (Id.) Hilton was not punished for the incident. Drazenovich stated, "This incident was not the result of Hilton failing to properly inspect the

---

[1] The Accident Review Committee is comprised of Drazenovich, "Barry Doebert, Administration Division Director, the Senior Administrative Assistant and Administrative Assistant. Any Division Director that has an employee with an accident is invited to attend the meeting. The Committee meets periodically and the purpose of the Committee is to review each accident within the department to assess the cause, whether it could have been prevented, whether additional training and education is warranted for employees to decrease occurrences [,] and whether any changes in protocol or institution of new protocol is necessary to prevent accidents in the future." (Drazenovich Aff. ¶ 8.)

equipment or carelessness but rather due to the malfunction of the clamp." (Drazenovich Aff. ¶ 30.)

Plaintiff also asserts that an incident involving another white driver, Sam Crumpton, highlights the differing treatment between black and white drivers. On January 29, 2014, Plaintiff was riding with Crumpton during emergency snow removal. Crumpton "was attempting to drive up a hill when the truck stopped pulling." (Garland Aff. ¶ 15.) Plaintiff and another passenger advised Crumpton to put the truck in neutral, but Crumpton put the truck in reverse. (Id.) As a result, the truck "jackknifed and damaged the truck's jack." (Id.) Plaintiff asserts that the incident happened twice that day, but Crumpton never reported the incident. (Id. ¶¶ 15–16.) Nevertheless, Crumpton's supervisor's found out about the incident, but Crumpton was not drug-tested or punished. Additionally, Plaintiff claims Wyatt did not file an accident report (as required) until Plaintiff reported the incident to Human Resources. (Id. ¶ 20.)

Crumpton's supervisors disagree with Plaintiff's version of the facts.[2] They contend that Crumpton's truck merely slid back while ascending a hill. (See Drazenovich Aff. ¶ 23.) They contend that Crumpton *did* report this incident to Wyatt (id. ¶ 25; Wyatt Aff. ¶ 23), but that Crumpton was not drug-tested because of extenuating circumstances (the weather and the lack of personnel to cover for him while he was taken to be drug-tested) (Wyatt Aff. ¶ 24).

On February 28, 2014, Plaintiff backed Truck 239 into a service welder truck. (Drazenovich Aff. ¶ 39.) According to Drazenovich:

> A co-worker witnessed the accident and there was evidence of damage which matched the two vehicles. [] Plaintiff was witnessed parking Truck 239 and walking away after the incident. [] Plaintiff was the only person to drive Truck 239 that day and the

---

[2] Regarding Plaintiff's December 9, 2013, incident and Crumpton's January 29, 2014, incident, I accept Plaintiff's version of the facts. Not only am I required to do so on a motion for summary judgment, but Plaintiff is the only fact witness who was present for these events and, thus, is the only witness with direct knowledge of the facts.

>welder truck was parked at that location for only a short period of time that afternoon.  [] Plaintiff failed to report the accident, left the scene and, when questioned, denied that it had occurred.

(Drazenovich Aff. ¶ 39.)  Plaintiff was suspended for three days, without pay.  He did not grieve the discipline and has not denied these allegations in this proceeding.

On April 22, 2014, Goss was monitoring the GPS locations of the vehicles when he noticed Truck 219—the truck Plaintiff was driving that day—off its route.  (Goss Aff. ¶ 20.)  Goss called Plaintiff on the radio and told Plaintiff to see him before he left for the day.  The two spoke for thirty to forty minutes, and Plaintiff told Goss that he was picking up trash for a citizen who had failed to put her trash out on the scheduled pick-up day.  (Id. ¶ 21.)  Goss advised Plaintiff that he did not have the authority to make such a decision.  (Id.)

Goss also discovered that, when Plaintiff "drove down Tom Fork Road, he drove across Cane Creek Bridge which has a weight limit of eight (8) tons."  (Id. ¶ 22.)  When Plaintiff drove across Cane Creek Bridge, his truck weighed 39,740 pounds, or 19.87 tons, meaning the truck weighed over twice the bridge's posted weight limit.  (Id.)  As a result of his actions, Drazenovich alerted the Virginia Department of Transportation and scheduled an emergency review of the bridge's structural integrity.  (Drazenovich Aff. ¶ 40.)  Plaintiff has not denied these allegations.

The next day, Plaintiff was advised by letter that he was suspended without pay and would be terminated thereafter.  (Id.)  On April 28 Plaintiff elected to take early retirement, effective May 1.  (Id. ¶ 41.)

Plaintiff filed a Charge of Discrimination with the EEOC on August 22, 2014.  On the Notice of Charge of Discrimination sent to the City, only "Race" is noted as a "Circumstance[] of Alleged Discrimination."  (Def.'s Mem. in Supp. of Mot. for Summ. J. Ex. A [ECF No. 26-

1].) On the Charge of Discrimination, Plaintiff alleged discrimination based on "Race" and "Retaliation." Plaintiff described the alleged discrimination as follows:

> 1. I was hired on April 4, 2001. On December 9, 2013, I was formally disciplined and drug tested following an accident with a spare side loader truck. I was given a five-day suspension that was later reduced to two days. Other White employees engaged in similar conduct and received no discipline. For example, a White co-worker drove a truck that slid down a hill in the snow and jackknifed. This employee did not report it and tried to fix the broken jack himself before he finally admitted to the accident later in the afternoon. Still, he was not disciplined or drug tested. I filed a grievance. I believe that Wallace Wyatt, Supervisor, treated me unfairly because I am Black. I was terminated on April 24, 2014. I was told that I was suspended and terminated because I failed to monitor my truck properly and violated safety procedures.
> 3. I believe I was discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Id.) Plaintiff received a Right to Sue notice on January 7, 2015. [ECF No. 2-1.] Plaintiff filed a *pro se* Complaint in this court on April 7, 2015, and an Amended Complaint (with the aid of counsel) on July 30, 2015. [ECF No. 20.] The City filed its Motion for Summary Judgment on November 14, 2015. [ECF No. 25.] Plaintiff filed a brief in opposition on December 9 [ECF No. 31], and the City replied on January 7, 2016 [ECF No. 32]. I heard oral arguments on January 14, 2016.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); George & Co. LLC v. Imagination Entertainment Ltd., 575 F.3d 383, 392 (4th Cir. 2009). A genuine dispute of material fact exists "[w]here the record taken as a whole could . . . lead a rational trier of fact to find for the nonmoving party." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal quotation marks and citing reference omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986).  A genuine dispute cannot be created where there is only a scintilla of evidence favoring the nonmovant; rather, the Court must look to the quantum of proof applicable to the claim to determine whether a genuine dispute exists.  Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson, 477 U.S. at 249−50, 254.  A fact is material where it might affect the outcome of the case in light of the controlling law.  Anderson, 477 U.S. at 248.  On a motion for summary judgment, the facts are taken in the light most favorable to the non-moving party insofar as there is a genuine dispute about those facts.  Scott, 550 U.S. at 380.  At this stage, however, the Court's role is not to weigh the evidence, but simply to determine whether a genuine dispute exists making it appropriate for the case to proceed to trial.  Anderson, 477 U.S. at 249.  It has been noted that "summary judgment is particularly appropriate . . . [w]here the unresolved issues are primarily legal rather than factual" in nature.  Koehn v. Indian Hills Cmty. Coll., 371 F.3d 394, 396 (8th Cir. 2004).

### III.  DISCUSSION

Plaintiff raises several theories of recovery in his attempt to state a claim for race discrimination contrary to Title VII, but they all fail.

Plaintiff primary allegation is that he was disciplined more harshly than his white co-workers for similar conduct.  The typical model of proof for discrimination—the prima facie model outlined in McDonnell Douglas Corp. v. Green—is "less useful" in the context of allegations of discriminatory discipline.  Moore v. City of Charlotte, 754 F.2d 1100, 1105 (4th Cir. 1985).  "The most important variables in the disciplinary context, and the most likely sources of different but nondiscriminatory treatment, are the nature of the offenses committed and the nature of the punishments imposed."  Id.  Thus, a plaintiff carries his burden of establishing a prima facie case of discriminatory discipline by showing: "(1) that [the] plaintiff

- 7 -

Case 4:15-cv-00012-JLK-RSB   Document 37   Filed 02/05/16   Page 7 of 14   Pageid#: 510

engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin, and (2) that disciplinary measures enforced against the plaintiff were more severe than those enforced against the other person." Id. at 1105–06.

Like the model in McDonnell Douglas, however, the burden of production shifts once the prima facie case is established. Once the plaintiff establishes the elements of discriminatory discipline, the burden shifts to the employer to establish a legitimate, non-discriminatory reason for the differing discipline. See id. at 1106. The Fourth Circuit has cautioned:

> The defendant may not discharge its burden by merely restating the offense for which the plaintiff was disciplined; plaintiff must already have known this information in order to make a prima facie case. Defendant's burden is designed to focus the contested issues at trial and to ensure the production of evidence available only to the defendant, such as insight into the discretionary factors underlying defendant's decision to discipline two individuals differently.

Id. "If the defendant fulfills this obligation, the plaintiff must rebut the proffered explanation and meet the ultimate burden of proving intentional discrimination." Id. (citing Tx. Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 256 (1981)).

In the present case, Plaintiff contends that his December 9, 2013, offense—failing to pre-trip his vehicle, resulting in him pulling a leaf-loader across the parking lot—is similar to incidents involving Sam Crumpton and Scott Hilton. He contends his punishment—a two-day suspension—was more severe. Assuming, for the sake of argument, that he is correct that his incident is comparable to Crumpton's and Hilton's, the City counters that Plaintiff's prior disciplinary record justifies the differing disciplinary measures.[3] Plaintiff concedes the City has

---

[3] Plaintiff's argument that the City's affidavits may not be considered is unavailing. By the express terms of the notarial statement included on the City's affidavits, the statements were given under oath. Under Virginia law, a notary may administer such oaths. See Va. Code Ann. 47.1-12(ii) (2015). Thus, the affidavits are properly sworn and may be considered. Accord Drager v. Bridgeview Bank, Case No. 1:10-

- 8 -

offered a legitimate, non-discriminatory reason for the difference. (Pl.'s Mem. pg. 12 ("Plaintiff believes that the Defendant can articulate a non-discriminatory reason for the difference in disciplinary measures.").) The burden is therefore on Plaintiff to show that the City's rationale is nothing more than a pretext for discrimination. He has failed to do so.

There is no serious dispute that Plaintiff has a long record of disciplinary infractions during his employment with the City. In the evidence presented to the court, Plaintiff does not dispute any of the allegations of carelessness, save for the December 9th incident. The unrebutted claims include:

- Causing damage to a property owner's yard on March 30, 2012 (Wyatt Aff. ¶ 28);
- Failing to retract the dump arm on his truck and striking a private citizen's vehicle on August 16, 2012 (Drazenovich Aff. ¶ 36);
- Mistakenly opening the tailgate of his truck and dumping trash into the street on August 19, 2013 (id. ¶ 37); and
- Failing to maintain control of his vehicle, damaging a property owner's grass and nearly reaching an embankment on May 7, 2013 (id. ¶ 38).

Tellingly, Plaintiff does not dispute that any of these events occurred and does not dispute the City's version of these events.

Plaintiff has not offered any evidence to show that his disciplinary record has been misrepresented, and he has not offered any evidence to show how his disciplinary record compares to that of Sam Crumpton or Scott Hilton. There is no way for the court to compare the disciplinary records of Plaintiff and his comparators to determine if the City's explanation is worthy of credence. Thus, Plaintiff has failed to carry his burden to show that the City's admittedly non-discriminatory rationale is a pretext for discrimination. See also Gilbert v. Penn-Wheeling Closure Corp., 917 F. Supp. 1119, 1126 (N.D.W. Va. 1996) ("This Court finds that as a matter of law, the use of discretion in termination is not equivalent to discrimination."); Pope v.

---

cv-7585, 2011 WL 2415244, at *4 n.4 (N.D. Ill. June 13, 2011) (rejecting argument similar to Plaintiff's because the affidavit in question stated that it was "subscribed and sworn" before the notary).

City of Hickory, 541 F. Supp. 872, 878–79 (W.D.N.C. 1981), aff'd, 69 F.2d 20 (4th Cir. 1982) (holding that subjective standards in disciplinary matters are appropriate—and do not rise to discrimination—if the standards are "applied within reasonable bounds of traditional management discretion").

Plaintiff argues that Anthony Williamson's testimony that Plaintiff was treated "unfairly" and the fact that Plaintiff believes he was the target of unfair write-ups serves to rebut the City's rationale. First, Anthony Williamson's opinion is a conclusory one devoid of factual support. Second, it does nothing to rebut the seriousness of Plaintiff's disciplinary record. In the same vein, Plaintiff may *believe* that he was the subject of unfair write-ups, but he has not disputed any of the City's evidence regarding his disciplinary record. It is not enough to merely argue that the City should not be believed; the argument must have factual support. Plaintiff has not provided it.[4]

Plaintiff also argues that the City' treatment of Richard Jackson establishes that its purported rationale for disciplining Plaintiff differently is a pretext for discrimination. Jackson stated that, after a verbal altercation in which Hilton told Jackson to "kiss his ass" and Jackson told Hilton he would "hurt him," Jackson was disciplined but Hilton was not. (Aff. of Richard Jackson ¶ 5, Dec. 9, 2015 [ECF No. 31-7].) The Record lacks any evidence, however, to establish who decided to punish Jackson or to show that Jackson even worked in the same department as Plaintiff or Hilton. These basic facts are necessary to draw any corollary between the environment in which Plaintiff claims he suffered discrimination and Jackson's instance of

---

[4] Plaintiff contends that he may be able to marshal more evidence for his claim through additional discovery. (See Pl.'s Mem. pg. 13.) The Federal Rules of Civil Procedure set forth a procedure for avoiding summary judgment when more discovery is needed. See Fed. R. Civ. P. 56(d). Because Plaintiff has failed to show that additional facts are unavailable to him, he cannot avoid judgment because he has not justified his opposition.
- 10 -

disparate treatment. Without some evidentiary support to tie Jackson's incident to Plaintiff's workplace, Plaintiff has failed to show how Jackson's incident is relevant to these proceedings.

Plaintiff's next allegation of discrimination is his claim that he was wrongfully terminated in violation of Title VII. In order to succeed on a claim of discriminatory discharge, Plaintiff must show: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012) (citing White v. BFI Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)). If Plaintiff can establish the prima facie elements, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for its action. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The employer's burden is one of production, not persuasion. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000). Once the employer offers a legitimate rationale for its actions, the burden shifts back to Plaintiff to prove that the rationale offered is but a pretext for discrimination. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510 (1993) (stating that, once an employer succeeds in carrying its burden of production, "the McDonnell Douglas framework—with its presumptions and burdens—is no longer relevant. . . . The defendant's 'production' (whatever its persuasive effect) having been made, the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven 'that the defendant intentionally discriminated against [him]' because of his race." (quoting Burdine, 450 U.S. at 253)).

There is no serious dispute that Plaintiff satisfies the first and third prongs.[5] What is also clear, however, is that Plaintiff has not satisfied the third prong—namely, there is ample

---

[5] The City fleetingly argues that Plaintiff was not "terminated" because he took early retirement, but the City made it clear to Plaintiff that it intended to terminate his employment on a date certain. A reprimand

evidence to show that Plaintiff was not performing his job satisfactorily at the time of his termination.

As stated above, prior to the December 2013 incident, Plaintiff had a slew of mishaps on his Record that he does not dispute. Although he disagrees—and has offered evidence—that the December 2013 incident was not the result of his carelessness, the remainder of his disciplinary record establishes that he was not performing to his employer's legitimate expectations. In addition to those incidents recounted *supra*, Plaintiff had other incidents of carelessness.[6] These include:

- On February 28, 2014, Plaintiff backed into a service welder truck, did not report it, and expressly denied his involvement in the incident (Drazenovich ¶ 39); and
- On April 22, 2014, Plaintiff drove over a bridge with a posted weight limit of eight tons while driving a truck weighing over nineteen tons. He was outside his route at the time performing an unauthorized pick-up, and his carelessness violated state law and required an emergency VDOT review of the bridge's structural integrity. (See Goss Aff. ¶ 20; Drazenovich Aff. ¶ 40.)

Plaintiff does not dispute these facts at all.

Based on Plaintiff's undisputed disciplinary record (which excludes the December 2013 incident), no reasonable juror could conclude that Plaintiff was performing his job to his employer's legitimate expectations. He had repeatedly caused damage to private property, caused damage to public property, and compromised the structural integrity of a public bridge in a manner that endangered his life, his coworkers' lives, and the lives of the general public. For this reason, he has failed to put forth sufficient evidence to establish that he was performing his

---

that is tied to future termination can be an adverse employment action. See Nichols v. Harford Cnty. Bd. of Educ., 189 F. Supp. 2d 325, 342 (D. Md. 2002). Accord Bauer v. Holder, 25 F. Supp. 3d 842, 853–54 (E.D. Va. 2014) (holding that a resignation was an adverse employment action because it was coerced and "did not constitute a voluntary resignation").

[6] These additional allegations of carelessness were not considered during review of Plaintiff's discriminatory discipline claim because they occurred after the December 2013 incident for which Plaintiff was disciplined. Thus, the City could not consider them when determining what discipline to impose on Plaintiff for the December 2013 incident.

- 12 -

job satisfactorily at the time of his termination, and summary judgment should be entered for the City.  Accord Pettiford v. N.C. Dep't of Health & Human Servs., 228 F. Supp. 2d 677, 690 (M.D.N.C. 2002) (holding that the plaintiff had not adequately countered her employer's evidence regarding her poor job performance); Gilbert v. Penn-Wheeling Closure Corp., 917 F. Supp. 1119, 1126 (N.D.W. Va. 1996) (noting that the plaintiff admitted his performance had deteriorated and did not dispute disciplinary action taken against him).

Plaintiff's next claim—unfair employment practices—is probably best understood as one of disparate treatment in violation of Title VII.  Plaintiff claims that Farmer—a white employee—was treated better than the other African-American drivers.  Under Title VII:

> [A] plaintiff may establish a prima facie case of disparate treatment by direct or circumstantial evidence.  To prove a Title VII violation by circumstantial evidence, [Plaintiff] may proceed under the three-step scheme of McDonnell Douglas Corp. v. Green.  First, [Plaintiff] must make a prima facie case of disparate treatment by showing that (1) he is a member of a protected class; (2) he suffered adverse employment action; (3) he was meeting his employer's legitimate expectations; and (4) similarly situated employees outside his class received more favorable treatment.

Popo v. Giant Foods, LLC, 675 F. Supp. 2d 583, 589 (D. Md. 2009) (internal citations omitted). Insofar as Plaintiff is proceeding under a "circumstantial evidence" theory, his claim fails for the reasons mentioned above (his failure to show that he was meeting his employer's legitimate expectations).

Moreover, Plaintiff has failed to marshal evidence to show that the disparate treatment did, in fact, occur.  Plaintiff claims that, at some point in 2013,[7] he was forced to drive Truck 208 to accommodate Farmer, a white driver.  (See Compl. ¶¶ 12, 17–20.)  Plaintiff's records show, however, that no such switch was mandated.  Plaintiff's records establish that, on the date in

---

[7] Plaintiff's affidavit does not state the date.  In his Amended Complaint, Plaintiff states that the switch was mandated on December 6, 2013.

question, Plaintiff was assigned a rear-loading truck and did, in fact, driver a rear-loading truck.[8] (See Wyatt Aff. Exs. C-1 & C-2.) Thus, his only evidence of disparate treatment is simply not supported by the evidentiary record. The City is entitled to judgment as a matter of law.[9]

## IV. CONCLUSION

Plaintiff's disciplinary record is his downfall. By failing to dispute *any* of the numerous write-ups in his disciplinary file (with the exception of the December 9, 2013 incident), he has failed to show that he was meeting his employer's legitimate expectations. The City also asserts that Plaintiff's disciplinary record was more severe than his proposed comparators, a fact which Plaintiff does not dispute. As such, he has failed to rebut the City's legitimate, non-discriminatory reason for his more severe punishment. On the basis of his disciplinary record, all of Plaintiff's discrimination claims fail.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

Entered this 5th day of February, 2016.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE

---

[8] Truck 208 is a side-loading truck.

[9] At oral argument, Plaintiff withdrew his claim of retaliation, so that claim will be dismissed as well.

- 14 -